DECISION
{¶ 1} Relator, Yvette McManaway, commenced this original action seeking a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order *Page 2 
denying relator's application for temporary total disability compensation and to find she is entitled to that compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded (1) the commission properly could rely on Dr. Lawson's report because it is not contradictory or internally inconsistent, and (2) relator's newly allowed condition did not support an award of temporary total disability compensation because relator's condition reached maximum medical improvement before the additional condition was allowed. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator filed objections to the magistrate's decision:
 A. THE MAGISTRATE'S FINDING THAT RELATOR WORKED AS A CORRECTIONS OFFICER FROM 2001 THROUGH 2004 IS FACTUALLY INNACURATE [sic] AND IS NOT SUPPORTED BY THE RECORD
 B. THE MAGISTRATE'S FINDING THAT DR. LAWSON'S REPORT IS SOME EVIDENCE TO JSUTIFY [sic] THE DENIAL OF TEMPORARY TOTAL DISABILITY CONSTITUTES AN ERROR OF LAW
 {¶ 4} Initially, relator contends the magistrate erred in finding that relator worked as a corrections officer from 2001 through 2004. The magistrate's statement is found not in the enumerated findings of fact, but in her discussion of whether relator's newly allowed condition is a new and changed circumstance that supports a new period of temporary total disability. *Page 3 
 {¶ 5} Addressing the newly allowed condition, the magistrate acknowledged relator correctly asserts that an additional claim allowance after a finding of maximum medical improvement may be cause for resuming the payment of temporary total disability compensation if the new claim allowance has not reach maximum medical improvement and the other requirements for temporary total disability compensation are met. In that context, the magistrate noted relator worked as a corrections officer at a prison from March 2001 to October 2004. Nonetheless, in resolving relator's argument, the magistrate resorted to Dr. Lawson's report on which the commission relied: it concluded the newly allowed additional condition reached maximum medical improvement years earlier. As a result, even if the magistrate's actual finding about relator's employment as a corrections officer from March 2001 to October 2004 be in error, the error did not prejudice relator because any mistake was immaterial to the magistrate's ultimate conclusion. Relator's first objection is overruled.
 {¶ 6} Relator's second objection "continues to assert that the report of Dr. Lawson is equivocal or internally inconsistent and as such does not constitute `some evidence' upon which the commission may rely." (Relator's Objections, 2.) For the reasons set forth in the magistrate's decision, relator's contentions are unavailing.
 {¶ 7} As the magistrate observed, relator first "contends that it is contradictory for Dr. Lawson to opine that she has reached [maximum medical improvement] without discussing her newly allowed conditions which are producing incontinence and pain radiating down her leg." (Magistrate's Decision, at ¶ 33.) The magistrate noted, however, that although relator's "claim was not additionally allowed for aggravation of pre-existing *Page 4 
degenerative disc disease until 2005, the record indicates that she had been experiencing symptoms attributable to that condition since 1998." Id. The magistrate thus concluded Dr. Lawson could "opine that even her newly allowed condition reached [maximum medical improvement] years earlier." Id.
 {¶ 8} Relator also contends Dr. Lawson's report is equivocal in opining that relator could not return to her former job as a police officer, but stating that she could work in some other capacity. The magistrate explained that although Dr. Lawson opined that relator could not return to her former job as a police officer, relator nonetheless is not entitled to temporary total disability compensation if she reached maximum medical improvement. Because Dr. Lawson opined that relator reached maximum medical improvement years earlier, Dr. Lawson was not equivocal in opining that "she could not return to her former job but that she could perform other work." (Magistrate's Decision, at ¶ 34.)
 {¶ 9} Lastly, relator contends Dr. Lawson's report is contradictory in recommending a functional capacity evaluation and vocational training after he opined he saw no reason why relator could not return to work. As the magistrate explained, Dr. Lawson provided physical findings in his report, but "he did not provide an opinion regarding what level of strength relator could perform. A functional capacity evaluation would assist in identifying relator's physical abilities, and vocational training would identify jobs for which she was qualified." (Magistrate's Decision, at ¶ 35.) *Page 5 
 {¶ 10} Because the magistrate appropriately addressed and resolved relator's contentions concerning the allegedly contradictory nature of Dr. Lawson's report, we overrule relator's second objection.
 {¶ 11} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
BROWN and BOWMAN, JJ., concur.
BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.{PRIVATE } *Page 6 
 APPENDIX A MAGISTRATE'S DECISION Rendered on May 29, 2007 IN MANDAMUS {¶ 12} Relator, Yvette McManaway, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary total *Page 7 
disability ("TTD") compensation and ordering the commission to find that she is entitled to that compensation.
Findings of Fact: {¶ 13} 1. Relator sustained a work-related injury on January 27, 1989, while in the course of her employment as a police officer for the city of Columbus. Relator's workers' compensation claim was originally allowed for the following conditions: "abrasions both hands, face; lacerations both hands, face, low back, both legs; low back strain/sprain; post concussion syndrome."
 {¶ 14} 2. An MRI of relator's lumbar spine, taken November 1, 1997, revealed the following:
 [One] There are some degenerative changes primarily affecting the facet joints in the lower lumbar spine at L4-5.
 [Two] There may be a transitional L5 vertebra, this would be better determined by plain film study.
 {¶ 15} 3. Because relator was experiencing chronic low back pain with right-sided radiculopathy, relator received caudal epidural steroid injections in August 1999.
 {¶ 16} 4. In a report dated May 20, 1998, David M. Vaziri, M.D., noted that relator continued to complain of right-sided low back pain radiating into her right groin, but not down her leg. He noted that relator indicated that she has increased low back pain with housework and that she was not currently undergoing any physical therapy. Dr. Vaziri opined further that relator's physical conditions had reached maximum medical improvement ("MMI"). At the time of his report, Dr. Vaziri noted that relator's date of injury was nine years prior and that lumbosacral strains usually resolve within four to six *Page 8 
weeks. Dr. Vaziri further opined that relator could not return to her former position of employment as a police officer due to the subjective complaints associated with her post-concussion syndrome. He opined further that relator could perform light or sedentary duties with no limitations on sitting, standing, or walking. He also indicated that relator could lift, carry, or push up to 25 pounds occasionally, and up to 15 pounds frequently.
 {¶ 17} 5. In a letter dated June 29, 1999, Renee M. Caputo, M.D., noted that relator had piercing right low back pain radiating to the posterior portion of her leg, accompanied by bowel and bladder incontinence. She noted further that relator was currently receiving treatment for this condition, including physical therapy and pain management. Dr. Caputo opined that relator's continuing pain and incontinence were directly related to the 1989 injury.
 {¶ 18} 6. On August 23, 2005, relator filed a motion requesting that her claim be additionally allowed for aggravation of pre-existing degenerative disc disease. Relator relied upon the June 30, 2005 report of Wes F. Hard, M.D., as well as an MRI. In his report, Dr. Hard opined:
 * * * Ms. McManaway has a diagnosis of low back strain and sprain. The guidelines state that a strain/sprain should be healed within 16 weeks after an injury. Ms. McManaway's injury has long been over 16 weeks ago, as a matter of fact several years. I do believe that with all medical probability that her degenerative disc disease was aggravated by her industrial injury and has continued to cause her problems ever since and should be added to her claim. * * *
 {¶ 19} 7. A file review was conducted by Thomas G. Hospel, M.D. In his September 21, 2005 report, Dr. Hospel noted that a clinic note from August 2001
revealed that relator had a history of chronic low back pain with radiation into her right leg. *Page 9 
Dr. Hospel also referenced a May 1998 X-ray revealing vertebral height narrowing at L5-S1. Ultimately, Dr. Hospel concluded that the evidence did not support the requested additional allowance of aggravation of pre-existing degenerative disc disease noting that the 1997 MRI did not reveal objective findings of degenerative disc disease.
 {¶ 20} 8. Relator's motion seeking the additional allowance was heard before a district hearing officer ("DHO") on November 15, 2005 and, based upon the June 30, 2005 report of Dr. Hard, relator's claim was additionally allowed for: "aggravation of preexisting degenerative disc disease low back." No appeal was taken.
 {¶ 21} 9. Thereafter, relator filed a motion requesting an award of TTD compensation from December 15, 2003 through an estimated return-to-work date of February 15, 2006. On the C-84 completed by Dr. Hard, the objective finding was the positive MRI and the subjective finding was low back pain with pain radiating to legs and toes. Dr. Hard also requested that an EMG/NCV be performed.
 {¶ 22} 10. An independent medical exam was performed by Dr. Thomas Lawson. In his March 15, 2006 report, Dr. Lawson listed the following records which he reviewed: November 13, 1997 MRI; May 20, 1998 report of Dr. Vaziri; August 2, 2001 letter from Dr. Hard indicating relator was totally disabled; June 30, 2005 letter from Dr. Hard requesting nerve conduction study; and September 25, 2005 medical file review of Dr. Hospel. Thereafter, Dr. Lawson noted the following findings upon physical examination: straight leg raising did not result in classic radiculopathy; paravertebral muscular tenderness and spasm to light touch of the lumbar spine; flexion to 60 degrees; extension to 25 degrees; flexion to the right 25 degrees; flexion to the left 25 degrees; and the evaluation *Page 10 
exacerbated relator's lumbar pain. Dr. Lawson concluded that relator's allowed conditions had reached MMI noting that the MRI revealed minimal changes at L5-S1 with no evidence of nerve root compression, stenosis, or disc herniation. He opined further that the condition of aggravation of degenerative disc disease would preclude relator from being able to return to her former position of employment as a police officer and recommended a functional capacity evaluation and placement in a vocational rehabilitation program based upon the results of that evaluation.
 {¶ 23} 11. Dr. Lawson was asked to complete an addendum to his March 2006 report to address whether relator needed an EMG-nerve conduction study and whether relator had been temporarily totally disabled since January 11, 2004. That addendum was prepared in April 2006. Dr. Lawson opined in the addendum that there was no medical reason for performing an EMG/NCV study because the lumbar MRI revealed minimal degenerative changes with no stenosis and no impingement. He noted further that the MRI findings coincided with his physical exam findings of no loss of sensation, motor loss and reflex loss. In response to the question of whether or not relator had been temporarily and totally disabled since January 2004, Dr. Lawson concluded:
 As stated above the MRI clearly reveals no evidence of nerve root compression and on my clinical exam the motor-neurological exam is intact. Based on the 2005 MRI scan and on the clinical exam there is No indication that Ms[.] Mcmanaway could not be employed from Jan 11, 2004. The medical data indicates that Ms[.] Mcmanaway could have been working from Jan 11, 2004. There is indication that she could not have returned to work as a police officer with the allowed condition of lumbar degenerative disc disease at the L5 S1 level. I have no data that Ms[.] Mcmanaway had undergone a FCE and vocational rehabilitation program from the date of injury until now. Ms[.] Mcmanaway could have *Page 11 
completed a vocational rehabilitation program and could have been working in a new vocation. Ms[.] Mcmanaway should undergo a functional capacity evaluation and placement in an appropriate Vocational Rehabilitation program based on the FCE so that she may enter the workforce as soon as possible.
(Emphasis sic.)
 {¶ 24} 12. Relator's request for TTD compensation was heard before a DHO on July 7, 2006, and resulted in an order denying the requested period of TTD compensation as follows:
 The injured worker was found to have reached maximum medical improvement by order dated 08/31/1998. The injured worker argued that the additional allowance on 11/15/2005 constitutes new and changed circumstances warranting the payment of a new period of temporary total compensation.
 According to Donald Rice v. I.C. (05/21/1998), 10th Ct. App., No. 97APD06-842, an additional allowance alone is not proof of new and changed circumstances so as to warrant the payment of temporary total compensation, there must also be a showing of a real change in the condition and/or treatment due to the additional allowance.
 In this case the injured worker has failed to prove a real change in her condition or her treatment. The injured worker testified that she has had incontinence since the injury. The 08/24/1999 report from Dr. Orzo documents long standing radicular complaints. There is no evidence of any change in the injured worker's condition. Further, the reports from Doctors Caputo (06/29/1999), Vaziri (05/20/1998), Cunningham (12/19/2001), and Lawson (03/15/2006), document that various types of treatment have been done in the past. There is currently no evidence of any new types of treatment being recommended due to the additional allowance. Therefore, it is the finding of the District Hearing Officer that the injured worker has failed to prove that the additional allowance constitutes sufficient new and changed circumstances to warrant the payment of temporary total compensation. *Page 12 
 {¶ 25} 13. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on August 10, 2006. The SHO affirmed the prior DHO's order and denied the period of TTD compensation as follows:
 Temporary total disability compensation as requested from 01/11/2004 to the present and continuing, based on the newly allowed condition of aggravation of pre-existing degenerative disc disease low back is denied.
 The denial of temporary total disability compensation from 01/11/2004 to present and continuing is based on the report of Dr. Lawson dated 03/15/2006. In that report, Dr. Lawson opines that, based on the 2005 MRI scan and on clinical examination, the MRI reveals no evidence of nerve root compression, and motor-neurological exam is intact. Dr. Lawson opines that there is no indication that the injured worker could not be employed from 01/11/2004.
 {¶ 26} 14. Relator's further appeal was refused by order of the commission mailed August 29, 2006.
 {¶ 27} 15. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 28} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. *Page 13 Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 30} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 31} For the reasons that follow, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus.
 {¶ 32} Relator first argues that the report of Dr. Lawson is so contradictory that it cannot constitute some evidence upon which the commission could rely. It is undisputed that equivocal or internally inconsistent medical opinions do not constitute "some *Page 14 
evidence" upon which the commission can rely. State ex rel. Eberhardt v.Flxible Corp. (1994), 70 Ohio St.3d 649, 655. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id.
 {¶ 33} As noted previously, relator argues that the report of Dr. Lawson is equivocal and contradictory in three respects. First, relator contends that it is contradictory for Dr. Lawson to opine that she has reached MM I without discussing her newly allowed conditions which are producing incontinence and pain radiating down her leg. At the outset of Dr. Lawson's report, he identified the medical records which he had reviewed. One of the reports considered by Dr. Lawson was the 1998 report of Dr. Vaziri who had noted that relator complained of pain radiating into her right groin, but not down her leg, and incontinence. At the time of his report, relator was nine years post injury. Dr. Vaziri opined that relator had reached MM I and that she could return to light or sedentary duties. Dr. Lawson also indicated that he reviewed the September 2005 report of Dr. Hospel who identified clinic notes from August 2001 which revealed that relator had a history of chronic low back pain with radiation into her right leg. As such, as early as 1998, relator had symptoms which included radiculopathy and incontinence. Further, Dr. Lawson indicated that he had reviewed the 1997 MRI study which showed minimal degenerative changes and revealed no herniated disc. As such, the magistrate finds that Dr. Lawson did consider her allowed conditions and was aware that she had incontinence and radiating pain. In fact, the evidence shows that relator has suffered from incontinence and radiating pain since 1998. That is further supported by the 1999 report *Page 15 
of Dr. Caputo who noted that relator complained of pain radiating to the posterior portion of her leg which increases in proportion to the amount of activities she performs. Although relator is correct to note that her claim was not additionally allowed for the aggravation of pre-existing degenerative disc disease until 2005, the record indicates that she had been experiencing symptoms attributable to that condition since 1998. As such, the magistrate finds that it was not contradictory or otherwise equivocal for Dr. Lawson to opine that even her newly allowed conditions had reached MMI years earlier.
 {¶ 34} Relator also asserts that it was contradictory for Dr. Lawson to opine that she could not return to her former job as a police officer, but, that, he saw no reason why she was not currently working in some other capacity. It is correct that an award of TTD compensation is payable when the claimant cannot return to their former position of employment. Here, Dr. Lawson clearly opined that relator could not return to her former job as a police officer. However, it is also clear that TTD compensation is not payable to a claimant who has reached MMI. In the present case, Dr. Lawson opined that relator had reached MMI years earlier. As such, the magistrate finds that it was not contradictory for Dr. Lawson to opine that she could not return to her former job but that she could perform other work.
 {¶ 35} Next, relator contends that it was contradictory for Dr. Lawson to recommend a functional capacity evaluation and vocational training after he had opined that there was no reason why relator had not returned to some work. A functional capacity evaluation would provide evidence of relator's current abilities to perform at certain strength levels. Vocational training would help identify jobs for which relator would *Page 16 
be suited within the strength category identified following the functional capacity evaluation. However, his opinion on the issue was not premised on any findings which those evaluations would reveal. The magistrate finds that this is not contradictory. Although Dr. Lawson provided his physical findings upon examination in his report, he did not provide an opinion regarding what level of strength relator could perform. A functional capacity evaluation would identify her physical abilities and vocational training would identify jobs for which she was qualified.
 {¶ 36} As such, relator's first argument, that Dr. Lawson's report is hopelessly contradictory, lacks merit.
 {¶ 37} Relator next argues that the granting of newly allowed conditions is a new and changed circumstance which may be cause for awarding a new period of TTD compensation and that she only had to prove that this new condition was disabling. Relator asserts that the C-84 and the report from Dr. Hard prove that the newly allowed condition was disabling.
 {¶ 38} Relator is correct that the granting of an additional claim allowance after a finding of MMI may be cause for resuming the payment of TTD compensation if the new claim allowance is not at MMI and other requirements for TTD compensation are met. See State ex rel. Basye v.Indus. Comm. (1992), 64 Ohio St.3d 68. The record indicates that relator had been terminated from her employment as a police officer in 1990 and that she worked as a corrections officer at a prison from March 2001 to October 2004. Further, the record shows that her originally allowed conditions were found to have reached MMI in August 1998 and she had been awarded a ten percent permanent partial *Page 17 
award in September 2003. The question comes down to whether the commission abused its discretion in determining that there was some evidence in the record that the newly allowed condition did not render her disabled from December 15, 2003 through an estimated return-to-work date of February 15, 2006. Relator did submit a C-84 and a report from Dr. Hard wherein he opined that the newly allowed condition of aggravation of degenerative disc disease was rendering relator disabled. However, the record also contains the report and addendum report of Dr. Lawson which the magistrate has previously found was not contradictory and equivocal. Because the report and addendum report of Dr. Lawson constitute "some evidence" upon which the commission could and did rely, the magistrate concludes that it was not an abuse of discretion for the commission to determine that relator had not demonstrated that the newly allowed condition had rendered her disabled.
 {¶ 39} As noted previously, Dr. Lawson reviewed records which demonstrated that relator had been experiencing incontinence and radiating pain since 1998. Dr. Lawson examined relator in 2006, some eight years after relator first reported that she was experiencing those symptoms. Although relator did not request that her claim be additionally allowed for aggravation of pre-existing degenerative disc disease until 2005, it appears, from the evidence, that she was experiencing symptoms associated with that condition much earlier. In August 1999, relator underwent caudal epidural steroid injections because of right-sided radiculopathy. Further, relator was relying, in part, on an MRI from 1997. Because her symptoms had existed for such a prolonged period of time, the magistrate finds that it was not an abuse of discretion for the commission to rely upon *Page 18 
the report of Dr. Lawson who found that relator had reached MMI years earlier and was capable of performing at some work level.
 {¶ 40} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her application for TTD compensation and this court should deny relator's request for a writ of mandamus. *Page 1